**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:21-cv-00048-RJC-DSC**

| | | |
|---|---|---|
| **PARSEC VENTURES, LP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TGC SAVINGS, LLC** | ) | **ORDER** |
| **TYVOLA TRYON INVESTMENTS, LLC, and** | ) | |
| **AFSHIN G. GHAZI,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Plaintiff Parsec Ventures' motion for summary judgment (Doc. No. 24). Parsec Ventures brings this breach of contract action to recover $1.3 million loaned to Tyvola Tryon Investments ("Tyvola") in 2019, as well as the interest accrued on that loan and attorneys' fees incurred to enforce it. Afshin Ghazi, who guaranteed the loan on Tyvola's behalf, challenges Parsec's motion for summary judgment on the basis that the parties orally modified their contract and agreed to extend the loan's maturity date by one year in exchange for $100,000. Both the motion for summary judgment and Mr. Ghazi's opposition turn on whether an oral agreement under these circumstances could modify the parties' earlier written agreement.

Because Mr. Ghazi is statutorily barred from presenting evidence of an oral modification, and Parsec meets the requirements of proving breach of contract under New York law, there is no genuine dispute of material fact. Parsec is entitled to summary judgment on its breach of contract claim and on Mr. Ghazi's counterclaim. As further explained below, Parsec's motion for summary judgment (Doc. No. 24) is **GRANTED**.

1

## I.     BACKGROUND

In February 2019, persuaded by Charlotte-area developer Afshin Ghazi, Plaintiff Parsec Ventures loaned Defendant Tyvola Tryon Investments $1.3 million to facilitate development of a real estate project in Southwest Charlotte. Mr. Ghazi both signed the loan on Tyvola's behalf and guaranteed it, along with Defendant TGC Savings ("TGC"). The loan bore an annual interest rate of 14% and, according to the parties' written agreement, was due and payable one year after execution of the agreement: February 20, 2020. Default would occur if Tyvola failed to pay any sum "within ten (10) days after the same becomes due and payable," (Doc. No. 24-3, Loan Agreement, § 7.1), and interest on overdue payments would rise to 16%. (*Id.* § 2.4).

Language in the Loan Agreement characterized the agreement as final: "This Agreement, together with the other Loan Documents, constitutes the entire agreement between [Tyvola] and [Parsec] with respect to the making and funding of the Loan … This agreement shall not be amended or modified … except by instrument in writing duly executed by [Parsec] and [Tyvola]." (*Id.* § 8.7).

Mr. Ghazi's and TGC's guarantees were also conclusive – under the Guaranty Agreement, both agreed to "absolutely, unconditionally and irrevocably guarantee (as primary Obligor and not merely as surety) unto [Parsec], jointly and severally, the prompt and complete payment when due (whether at its maturity, by acceleration or otherwise) and performance of the Guaranteed Obligations." (Doc. No. 24-7, Guaranty Agreement, § 1). Furthermore, "if for any reason all or any portion of the Guaranteed Obligations shall not be performed or paid promptly when due," Mr. Ghazi and TGC promised to "promptly pay or perform the same to or on behalf of [Parsec]." (*Id.*, § 2). Finally, Mr. Ghazi and TGC agreed, under the Guaranty Agreement, to pay attorneys' fees related to Parsec's enforcement of its rights under the agreement. (*Id.*, § 17).

2

As commercial developments often are, Mr. Ghazi's was delayed, and a few weeks before the loan matured, Mr. Ghazi requested an extension. In accordance with the Loan Agreement, Mr. Ghazi and Parsec formalized a written amendment to the Loan Agreement on February 5, 2020, providing for extension of repayment by a year and setting the below schedule:

**February 20, 2020**          Payment of all accrued and unpaid interest

**August 20, 2020**          Payment of all accrued and unpaid interest

**February 20, 2021**          Payment of all remaining principal and interest

(Doc. No. 24-11, Amendment to the Loan Agreement).

Mr Ghazi's promised repayment turned out to be a velleity.  On February 23, 2020, just weeks after the amendment, Parsec CEO Richard Steel emailed Mr. Ghazi to alert him that he missed the February 20 deadline for accrued and unpaid interest. Mr. Ghazi promised payment, but two days passed; on February 25, Mr. Steel again requested the funds. The funds were never paid.

On July 1, 2020, Mr. Steel emailed Mr. Ghazi the Notice of Default in connection with the accrued and unpaid interest from February 20, 2020. (Doc. No. 24-14). After the Notice of Default, the parties continued to speak over the phone and through email, and in August 2020, Mr. Steel chronicled a phone call between himself and Mr. Ghazi in which Mr. Ghazi promised to repay some of the loan – "$800k to $1MM" – once he received a different loan. (Doc. No. 24-15).

Mr. Steel was careful to characterize the promised payment as a "partial repayment of the loan," and not as a full satisfaction of outstanding amounts, and Mr. Ghazi agreed. (Doc. No. 24-15).  Parsec received only part of that payment, however; on December 22, 2020, a third party paid $100,000 to Parsec on Mr. Ghazi's behalf. (Doc. No. 24-1). Immediately, Mr. Steel demanded the remainder: "Afshin – wire us the remaining $650k today before 3:00 EST or we file against you."

(Doc. No. 24-16).

After receiving no further payment from Mr. Ghazi, Tyvola, or TGC, Parsec filed a breach of contract action against Tyvola related to the Loan Agreement and against Mr. Ghazi and TGC related to their guarantees. All Defendants defaulted, (Doc. No. 5), and only Mr. Ghazi moved to set that default aside—accordingly, Parsec holds a default judgment against Tyvola and TGC for $1,605,385.12 plus costs and interest. (Doc. No. 13).

After the Court granted his motion to set aside default, Mr. Ghazi filed an answer and counterclaim centered on one premise: that in December 2020, Mr. Ghazi and Mr. Steel negotiated and ultimately orally agreed that in exchange for a $100,000 payment, Parsec would extend the due date for accrued interest repayment by another year, to February 20, 2021. (Doc. Nos. 15; 24-2, at 23). Parsec wholly denies any oral agreement, and the issue is ripe for determination.

## II.     STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.* The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." *Id.* at 325.

4

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Sylvia Dev. Corp. v. Calvert Cty.*, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id.* at 249-50.

### III. DISCUSSION

The sole issue in the instant motion and memoranda is whether the parties could orally modify their original contract. Parsec denies any oral agreement and argues that even if the parties had such an agreement, any oral modification would be ineffectual. While Mr. Ghazi concedes that oral agreements cannot modify prior written contracts, he argues that once an oral agreement has been completed, such performance can be used to prove contract modification.

At the outset, the parties agree that New York law governs this contract action under North Carolina's choice-of-law guidelines. *See Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655,

5

656 (1980) ("[W]here parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect."); (Doc. No. 24-7, Guaranty Agreement, § 11); (Doc. No. 25, at 12) (Parsec notes New York law applies); (Doc. No. 26) (Ghazi agrees).

To prevail in their breach of contract action, Parsec need only show "the existence of the guaranty, the underlying debt[,] and the guarantor's failure to perform under the guaranty." *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A., "Rabobank Int'l," N.Y. Branch v. Navarro*, 25 N.Y.3d 485, 492, 36 N.E.3d 80, 84 (2020). The parties dispute neither the existence of the guaranty (Doc. No. 24-7) nor the underlying debt (Doc. No. 24-3), but they do debate whether Mr. Ghazi performed under the guaranty. While Parsec argues that Mr. Ghazi failed to perform under the guaranty by refusing to pay the owed principal and interest, Mr. Ghazi argues that he did perform under the guaranty because the parties orally modified their contract and extended it by a year in exchange for $100,000.

Under New York law, "[a] written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent." N.Y. Gen. Oblig. Law § 15-301(1). Parsec's and Mr. Ghazi's arguments center around this statute and its interpretation – most importantly, the New York Court of Appeals' interpretation in *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 366 N.E.2d 1279 (1977).

Though Mr. Ghazi accepts that § 15-301 generally bars evidence of oral modifications in uncompleted contracts, he conflates his alleged partial performance of an oral modification with a fully executed contract. Comparing executory and completed modifications, *Rose* clarifies:

6

> [W]hen the oral agreement to modify has in fact been acted upon to completion, the same need to protect the integrity of the written agreement from false claims of modification does not arise. In such case, not only may past oral discussions be relied upon to test the alleged modification, but the actions taken may demonstrate, objectively, the nature and extent of the modification. … Thus, section 15-301 nullifies only "executory" oral modification. Once executed, the oral modification may be proved.

*Rose*, 42 N.Y.2d at 343, 366 N.E.2d at 1283. Mr. Ghazi argues that his payment of $100,000 represented the full completion of an oral modification between Parsec and himself to extend the loan repayment deadline by a year, and thus, that § 15-301 permits such modification.

Mr. Ghazi is incorrect – the alleged modification was unexecuted. "An 'executed' agreement is one that has been fully performed." *Id.* at 344, 366 N.E.2d at 1283; *id.* at 344, 366 N.E.2d at 1283 (characterizing a modification as executory where both parties had yet to perform); *see also Velveray Corp. v. Jolo Plastics Corp.*, 19 A.D.2d 69, 71, 241 N.Y.S.2d 377, 378 (1963), *aff'd*, 13 N.Y.2d 1165, 196 N.E.2d 738 (1964) (characterizing a modification as executed where both parties performed under the modification); *Executed Contract*, Black's Law Dictionary (11th ed. 2019) ("A contract that has been fully performed by both parties").

*Velveray Corporation* mirrors the instant facts. There, one party requested postponement of delivery of goods under a contract that provided a delivery date of January 4, 1960. The parties orally agreed to that modification and the seller held the goods until after January 4, 1960. Because that modification was fully completed when the seller held the goods past the original delivery date, the oral agreement was not executory. *Velveray Corp.*, 19 A.D.2d at 71, 241 N.Y.S.2d at 378. Here, even if the alleged modification existed, only Mr. Ghazi performed – under the modification, Parsec would not perform until February 20, 2021, one year after the original payment date.

Mr. Ghazi could argue that Parsec performed under an oral modification by accepting Mr.

7

Ghazi's $100,000 payment in December and acquiescing to that payment long after all accrued interest was due under the contract, but no evidence supports that contention. Instead, as soon as Mr. Ghazi paid $100,000, Parsec demanded further payment, in line with the parties' conversations about Mr. Ghazi paying $800,000—$1,000,000 as soon as he could in partial repayment of the loan. The *Velveray* sellers completed their part of the modification when they held the goods past the original delivery date; Parsec would have completed its part of the modification by waiting until February to demand more payment. Thus, Mr. Ghazi's $100,000 payment is partial performance and not a fully executed modification, and "to enforce what is less than a fully executed oral modification, the statute must be satisfied." *Rose*, 42 N.Y.2d at 344, 366 N.E.2d at 1283.

To satisfy "the statute," (§ 15-301), *Rose* recognized that when parties purport to modify a written agreement by an oral one, "[t]he first issue is whether partial performance of an oral modification suffices to take the modification out of the statutory requirement of a writing. The second, and alternative, issue is whether equitable estoppel may be invoked to bar a party from relying on the statute." *Id.*, 366 N.E.2d at 1281. Because the agreement is executory, Mr. Ghazi must meet both these requirements to introduce evidence of an oral modification contradicting the parties' written agreement.

### 1. Whether Mr. Ghazi's performance unequivocally refers to an oral modification.

Mr. Ghazi's payment of $100,000 is not unequivocally referable to an oral agreement to modify the parties' written contract, and thus, § 15-301 prohibits evidence of modification and the parties' written contract controls. Partial performance of an oral agreement to modify a written contract avoids the statutory requirement of a writing only if that performance is unequivocally referable to the modification. *Rose*, 42 N.Y.2d at 341, 366 N.E.2d at 1281. In this context, finding

8

conduct to be "unequivocally referable" to the oral agreement requires that the conduct be "not compatible with any option in the written agreement." *Id.* at 345, 366 N.E.2d at 1284. That is, when one party's conduct could only be explained by a subsequent oral modification, and not by the existing written contract, that conduct unequivocally refers to the oral modification.

Such are not the facts here. Instead, Mr. Ghazi's conduct is altogether consistent with the parties' original written contract. Under the amended contract, Mr. Ghazi, Tyvola, and TGC were jointly responsible for interest accrued up to February 20, 2020. Mr. Steel pursued Mr. Ghazi diligently for repayment – the record evinces at least four exchanges between Mr. Steel and Mr. Ghazi where Mr. Steel requested repayment. (Doc. Nos. 24-12, 24-14, 24-15, 24-16). Indeed, when Mr. Steel characterized those possible payments as "partial repayment of the loan," Mr. Ghazi replied "Accurate." (Doc. No. 24-15). Moreover, when Mr. Ghazi did pay $100,000, Mr. Steel immediately requested "the remaining $650k," in apparent reference to Mr. Ghazi's promise to begin reimbursement with a payment of nearly $1 million. (Doc. No. 24-16).[1]

Admittedly, the record lapses with respect to when or how Parsec agreed to accept $750,000 from Mr. Ghazi to begin repayment, but Parsec evidently did agree, and the emails between Mr. Steel and Mr. Ghazi demonstrate as much. Ultimately, however, whether Parsec consented to Mr. Ghazi's piecemeal repayment is immaterial – Mr. Ghazi's only payment, the $100,000 on December 22, 2020, was compatible with the written agreement under which he owed over $1.5 million. The undisputed record shows Mr. Steel's persistent efforts to get just *some* money from Mr. Ghazi, and Mr. Ghazi promised that money again and again.

_____

[1] In oral argument, counsel for Mr. Ghazi claimed that because Mr. Ghazi paid the $100,000 to Parsec through a third party instead of direct wire transfer or some other direct payment, such action was unequivocally referable to an oral modification. This argument is unpersuasive. The parties' written contract required that the loan and interest be repaid, and whether Mr. Ghazi paid in cash, wire transfer, or through a third party, his action was consistent with the written agreement.

Meanwhile, the record is devoid of any evidence that Parsec agreed to extend the term of the loan by a year in exchange for prompt payment. To the contrary, the record shows that Mr. Steel continuously requested payment, updated Mr. Ghazi of the increasing interest, and considered any payments "partial repayment of the loan" rather than a trade for extended time. (Doc. No. 24-15). Mr. Ghazi's payment of $100,000 is completely consistent with the parties' written contract, and thus, the payment is not unequivocally referable to an oral modification, and Mr. Ghazi cannot offer proof of an oral modification to overcome the written contract.

### 2. Whether Mr. Ghazi may invoke equitable estoppel.

Because Mr. Ghazi's payment of $100,000 is compatible with the agreement as written, § 15-301 prohibits evidence of oral modification and the parties' written contract controls. "Once a party to a written agreement has induced another's significant and substantial reliance upon an oral modification, the first party may be estopped from invoking the statute to bar proof of that oral modification. *Rose*, 42 N.Y.2d at 344, 366 N.E.2d at 1283. "[C]onduct relied upon to establish estoppel," however, "must not otherwise be compatible with the agreement as written." *Id.*, 366 N.E.2d at 1283.

Though "[a]nalytically distinct from the doctrine of partial performance," the incompatibility requirement is "[c]omparable to the requirement that partial performance be unequivocally referable." *Id.*, 366 N.E.2d at 1283. Mr. Ghazi's payment of $100,000 is compatible with the agreement as written. As written, the contract required Mr. Ghazi to pay accrued interest on February 20, 2020. When Mr. Ghazi refused to pay that interest, Mr. Steel demanded payment, held Mr. Ghazi in default, and continued to calculate interest under the written contract. In each communication between Mr. Steel and Mr. Ghazi, Mr. Steel updated the interest owed as

10

calculated under the written contract and continued to refer to repayment of the original loan.

The record is unambiguous: Mr. Steel sought any payment from Mr. Ghazi as it became clear that Mr. Ghazi's finances were unstable. Those payments, however, were made neither in satisfaction of the total amount due nor as a trade for extended deadlines; the only characterization of Mr. Ghazi's payment was a "partial repayment of the loan." (Doc. No. 24-15). In any event, that Mr. Ghazi would make a payment after it becomes due is wholly consistent with the parties' original contract, and thus, because such payment is compatible with the agreement as written, Mr. Ghazi cannot rely on equitable estoppel, and evidence of an oral modification is barred.

**3. Whether Parsec is entitled to summary judgment.**

> **A. Parsec is entitled to judgment as a matter of law on its claim and Defendants' counterclaim.**

Because Mr. Ghazi is statutorily barred from presenting evidence of an oral modification, Parsec meets the requirements of proving breach of contract under New York law, *see Cooperatieve Centrale*, 25 N.Y.3d at 492, 36 N.E.3d at 84, there is no genuine dispute of material fact, and Parsec is entitled to summary judgment on its breach of contract claim and on Mr. Ghazi's counterclaim.

In opposing summary judgment, (Doc. No. 26), Mr. Ghazi challenges summary judgment based only his argument that the oral modification was fully executed – he argues neither that the modification was unequivocally referable nor that he is entitled to equitable estoppel under *Rose.* Likewise, Mr. Ghazi argues in his counterclaim that once the parties did allegedly make such an oral modification, Parsec breached that new contract. (Doc. No. 15). Both arguments fail. The alleged modification was executory, the modification was not unequivocally referable, and Mr. Ghazi's performance was otherwise compatible with the agreement as written. Thus, the law leaves Mr. Ghazi without recourse and Parsec is entitled to judgment as a matter of law on both its claim

and Mr. Ghazi's counterclaim.

## B. Parsec is entitled to its calculated damages.

In its memorandum in support of summary judgment, Parsec calculates and presents its damages as contemplated by the parties' original agreement, including interest accrued, totaling $2,007,429.94. (Doc. Nos. 24-3, 25). "Contractual provisions providing for an increased interest rate on default are enforceable under New York law," *In re Chateaugay Corp.*, 150 B.R. 529, 542 (Bankr. S.D.N.Y. 1993), *aff'd*, 170 B.R. 551 (S.D.N.Y. 1994), and New York law "permits a creditor to recover prejudgment interest on unpaid interest and principal payments awarded from the date each payment became due under the terms of the promissory note to the date liability is established." *Spodek v. Park Prop. Dev. Assocs.*, 759 N.E.2d 760, 762 (N.Y. 2001). Therefore, Parsec is entitled to its presented damages as shown below, plus any interest that accrues through the entry of judgment.

| Date | Description | Days | Daily Interest | Amount | Total Amount Due |
|------|-------------|------|----------------|--------|------------------|
| 2/20/19 | **Loan** | | | $1,300,000.00 | -- |
| 2/20/20 | **Accrued Interest** | 365 | $498.63 | $182,000.00 | **$182,000.00** |
| 3/1/20 | **Additional Interest (14%)** | 10 | $498.63 | $4,986.30 | **$186,986.30** |
| 6/30/20 | **Additional Interest (16%)** | 121 | $651.83 | $78,871.38 | **$265,857.68** |
| 7/1/20 | **Notice of Default** | | | | **$1,565,857.68** |
| 12/21/20 | **Interest since Def. Notice** | 173 | $686.40 | $118,747.78 | **$1,684,605.47** |
| 12/22/20 | **Payment** | | | ($100,000.00) | **$1,584,605.47** |
| 8/30/22 | **SJ Motion** | 616 | $686.40 | $422,824.47 | **$2,007,429.94** |

## C. Parsec is entitled to its calculated attorneys' fees.

Finally, Parsec argues it is entitled to recover its reasonable attorneys' fees under the

12

parties' original agreement. "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (citing *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491-92, 548 N.E.2d 903, 904-05 (1989)).

The contract provides, "In the event the Lender engages legal counsel in connection with the enforcement of the Lender's rights or Guarantor's Guaranteed Obligations, representation[,] or covenants set forth in this Guaranty, the Guarantors shall pay the Lender's reasonable attorney's fees related thereto." (Doc. No. 24-7, Guaranty Agreement, § 17). If a contract provides for attorneys' fees – as it does here – the "court must order the losing party to pay the amount actually incurred by the prevailing party, so long as those amounts are not unreasonable." *Cnty. of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assocs., LP.*, 636 F. Supp. 2d 159, 179 (N.D.N.Y. 2009) (applying New York law).

A reasonable fee is "based upon a demonstration of the hours reasonably expended on the litigation and what is reasonable compensation for the attorney based upon the prevailing rate for similar work in the community." *RMP Cap. Corp. v. Victory Jet, LLC*, 139 A.D.3d 836, 839, 32 N.Y.S.3d 231, 236 (2016). In deciding what constitutes a reasonable number of hours and rate of compensation, New York courts look to:

> (1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; (2) the lawyer's experience, ability, and reputation; (3) the amount involved and benefit resulting to the client from the services; (4) the customary fee charged for similar services; (5) the contingency or certainty of compensation; (6) the results obtained; and (7) the responsibility involved.

*Id.* at 839, 32 N.Y.S.3d at 235; *see also Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 243–44 (4th Cir. 2009) (applying similar factors); *Arbor Hill Concerned Citizens Neighborhood Ass'n*

13

*v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 187 (2d Cir. 2008) (same).

Counsel for Parsec submitted an affidavit (along with nine invoices) detailing his work on this matter, his billing rate, and the attorneys' fees actually incurred by Parsec, which total $53,411.15. (Doc. No. 24-18). In those materials, counsel indicated that his effective billing rate for this matter was $747 for just over 70 hours of work, and he notes he is "familiar with rates charged by other attorneys of similar practice areas and tenure, and that he "believe[s] that an hourly rate of $747 is a fair and reasonable rate to award attorneys of [his] experience for the type of work [he] performed in this matter." (Doc. No. 24-18).

Counsel for Parsec has worked on this matter from its inception in January of 2021, and counsel's time entries are detailed and complete. These hours at this rate constitute a reasonable fee, and Parsec is entitled to its calculated attorneys' fees.

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1.    Plaintiff's Motion for Summary Judgment (Doc. No. 24) is **GRANTED**, and Defendant Ghazi is liable to Plaintiff for the following amounts:

      a.  Principal in the amount of $2,007,429.94;

      b.  All interest that accrues at a per diem rate of $686.40 until judgment is entered;

      c.  Attorneys' fees in the amount of $53,411.15; and

      d.  All post-judgment interest that accrues on the judgment until it is paid in full.

The Clerk is directed to close this case.

Signed: March 9, 2023

Robert J. Conrad Jr.
United States District Judge

15